```
              UNITED STATES DISTRICT COURT
                       FOR THE
              MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA       :
                               :   4:CR-05-0058
     v.                        :
                               :
DAVID S. GREEN                 :   (Judge Muir)
                               :
```

**OPINION**

I.   Introduction.

On February 3, 2005, Defendant David S. Green pled guilty to an information charging him with possession of less than 5 grams of crack cocaine, in violation of 21 U.S.C. § 844(a).  United States Probation Officer Eric Noll prepared a pre-sentence report in which he determined Green's advisory guideline imprisonment range to be 0 to 6 months.  Neither party objected to the pre-sentence report.  A pre-sentence conference was held on May 9, 2005.

On May 10, 2005, we issued an order in which we established a briefing schedule on the sentencing factors set forth in 28 U.S.C. § 3553(a).  At that point we intended to consider the parties' briefs, schedule Green's sentencing, and proceed directly to sentencing.  However, the sentencing briefs submitted by the parties indicated that material facts were in dispute.  On July 18, 2005, we issued an order in which we required the government to file a sur-reply brief concerning the disputed facts, and we allowed the parties an opportunity to file a motion

for a pre-sentence hearing to resolve any factual disputes.

On August 8, 2005, the government timely filed a motion for a pre-sentence hearing. On August 10, 2005, we issued an order scheduling the hearing for September 23, 2005. The hearing occurred on that date. During the hearing we issued an order allowing the parties until September 28, 2005, to file annotated proposed findings of fact and conclusions of law. The parties' timely filed those proposed findings and conclusions.[1]

The following are the Court's findings of fact, discussion, and conclusions of law. Findings of fact which are not disputed are noted with a "U" in parenthesis after each such finding. Findings of fact which are not disputed yet are objected to by one party are noted with a "U/O" in parenthesis after each such finding.[2]

## II. Findings of Fact

1. Shortly after 1:00 a.m. on September 18, 2004, Williamsport Police Officers Jason Bolt and Roy Snyder stopped a vehicle on Hepburn Street just north of West

---

[1] Although the government timely filed its annotated proposed findings of fact and conclusions of law electronically by way of computer on September 28, 2005, they were not filed under the caption of this case. The government noticed its error and electronically deleted the proposed findings and conclusions. A document with the corrected caption by the government was subsequently filed on October 4, 2005.

[2] We overrule the objections to the undisputed findings of fact used herein to which there have been objections.

     Third Street in Williamsport, Pennsylvania, for failing to stop at a flashing red light at the corner of Hepburn Street and West Third Street.  (U)

2. The vehicle was heading north on Hepburn Street.  (U)
3. The vehicle was driven by Haisson Williams.  (U)
4. Eddie J. Billingsley was in the front passenger seat. (U)
5. Seated in the rear, behind the front passenger was David Green.  (U)
6. The traffic stop occurred during Hurricane Ivan and throughout the entire stop there was heavy rain.
7. The police cruiser which had stopped the Defendants' vehicle on September 18, 2004, was equipped with a video system which records vehicle stops when activated.  (U)
8. The vehicle stop and events immediately following the stop were recorded from a camera mounted in the police cruiser.  (U)
9. Immediately following the vehicle stop, Officer Bolt approached the vehicle and requested identification from David Green and co-defendant Eddie Billingsley. (U)
10. David Green verbally identified himself but initially did not produce identification.  (U)

11. At 1:21:35 a.m. Eddie Billingsley opened the right front door of the vehicle. (U)

12. Billingsley got out of the car and got back into the car during the period time stamped on the videotape as 1:21:35 through 1:23:35. (U)

13. During the traffic stop, Billingsley made furtive movements before he got out of the car and after he got back into the car.

14. During the time when Billingsley was outside of the vehicle, David Green also got out of the vehicle.

15. Green was not wearing a raincoat.

16. Green appears to have exited the vehicle at that time to talk to Officer Bolt.

17. As Green approached Bolt he reached into one of his back pants pockets and retrieved his wallet.

18. While Green was outside the vehicle, Billingsley returned to the vehicle and paused while standing by the right front door of the vehicle.

19. The movements of Green and Billingsley do not appear to have been coordinated or orchestrated in any manner.

20. Officer Bolt does not remember any conversation he had with Green during the period time stamped on the videotape as 1:21:35 through 1:23:35.

21. Officer Bolt did not observe Eddie Billingsley dispose

of anything at any time during the traffic stop. (U)

22. After reviewing the portion of the videotape time stamped 1:21:35 through 1:23:35 at the sentencing hearing, Officer Bolt acknowledged that he observed David Green remove something from his back pocket after he exited the vehicle which quite possibly was his identification.

23. Eddie Billingsley later exited the vehicle a second time. (U)

24. The second time that Billingsley exited the vehicle during the traffic stop is shown during the portion of the videotape time stamped 1:39:41 through 1:40:17.

25. Green remained in the vehicle when Billingsley exited the vehicle the second time.

26. During his cross examination, Officer Roy Snyder testified as to what he observed when reviewing the portion of the videotape time stamped 1:39:41 through 1:40:17. (U)

27. At the point time stamped on the videotape 1:39:41, Haisson Williams was directly in front of the camera wearing a white shirt. (U)

28. At the point time stamped on the videotape 1:39:41, Eddie Billingsley is seen to the right of Haisson Williams. (U)

29. At the point time stamped on the videotape 1:39:41, David Green is seated in the back seat of the vehicle. (U)

30. During the portion of the videotape time stamped 1:39:41 through 1:40:17 Billingsley moves to the front right fender area of the vehicle.

31. Billingsley's movements at that time are consistent with the actions one would take to attempt to remove something from the vehicle without detection and deposit it in the street.

32. Officer Snyder testified that Eddie Billingsley's movements at the front right of the vehicle during the period time stamped 1:39:41 to 1:40:17 is the portion of the videotape to which he was referring in his report when he stated "[w]hen reviewing the videotape it was observed that Billingsley exited the Infinity, walked to the front of the car and dropped the black plastic bag object to the ground, then got back into the car." (U/O)

33. David Green could not have been distracting the police officer to facilitate Billingsley's disposal of the 10 ounces of crack cocaine during the period time stamped on the videotape 1:39:41 to 1:40:17 because he was seated in the back seat of the vehicle.

34. In connection with the traffic stop, the Williamsport Police Officers discovered 284.9 grams of cocaine base, or crack cocaine, in the street pavement area where the vehicle had been stopped.

35. At some time during the traffic stop Eddie Billingsley dropped the package containing the approximately ten ounces of crack cocaine by the right front of the vehicle in which the defendants had been riding.  (U)

36. On September 23, 2004, a federal grand jury returned a one-count indictment charging Green, Williams, and Billingsley with possession with the intent to distribute more than 50 grams of cocaine base and aiding and abetting in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2.

37. On February 3, 2005, the government, Green, and counsel for Green stipulated that "[a]fter the vehicle was stopped for a traffic violation, David Green learned that there was crack cocaine in the vehicle."  (U)

38. The felony charges initially filed against Green were ultimately resolved by Green pleading guilty to an information charging him with possession of less than 5 grams of cocaine base in violation of 21 U.S.C. § 844(a).

39. Haisson Williams is facing a sentencing guideline

imprisonment range of 151 to 188 months.  (U)

40. The government has agreed to recommend a downward departure in exchange for Haisson Williams's cooperation.  (U/O)

41. During Green's pre-sentence hearing, Williams stated for the first time that Williams had possessed five grams of crack cocaine when the traffic stop occurred on September 18, 2004.

42. Haisson Williams testified that Eddie Billingsley knew women in Williamsport and was going to introduce Haisson Williams and David Green to women.  (U/O)

43. Williams further testified that Green had been aware of the crack possessed by Williams.

44. There was no evidence relating to the recovery or disposition of the five grams of crack cocaine Williams claimed he possessed.  (U/O)

45. There were no police reports or reports of interviews of Williams relating to his supposed possession of five grams of crack cocaine and Green's supposed knowledge of that fact introduced at the sentencing hearing held on September 23, 2005.  (U/O)

46. Following his arrest on September 18, 2004, Williams made a statement to Williamsport Police Officer Snyder and lied.  (U/O)

47. On September 18, 2004, Williams lied when he told Officer Snyder that the vehicle in which they were riding belonged to his cousin, Kelly. (U/O)

48. On September 18, 2004, Williams lied when he told officer Snyder that Kelly was his cousin. (U/O)

49. On September 18, 2004, Williams lied when he told Officer Snyder that he had called Kelly from New York to tell her that he was coming to Williamsport to visit. (U/O)

50. On September 18, 2004, Williams lied when he told Officer Snyder that Kelly asked him to bring Green and Billingsley with him. (U/O)

51. On September 18, 2004, Williams lied when he told Officer Snyder that he, Green, and Kelly were all cousins. (U/O)

52. On September 18, 2004, Williams lied when he told Officer Snyder that Green had been to Williamsport before and that Green usually comes with him when he comes to Williamsport. (U/O)

53. Prior to September 18, 2004, Green had never been to Williamsport, Pennsylvania. (U/O)

54. Prior to the traffic stop Green did not know that there was crack cocaine in the vehicle.

55. Green was not coming to Williamsport, Pennsylvania, to

>       sell crack cocaine.

## II.  Discussion.

The parties do not contest the Probation Officer's determination that the advisory guideline imprisonment range is 0 to 6 months.  The dispute in this case concerns the issue of whether we may rely upon certain facts asserted in the government's sentencing briefs in sentencing Green.  The assertions at issue relate to Green's involvement in Williams's and Billingsley's conspiracy to distribute drugs in Williamsport.  The government specifically claims the following in its sentencing brief: 1) "While Billingsley was attempting to dispose [of] the ten ounces of crack[,] Green exited the vehicle and attempted to distract the police officers"; and 2) "... Green was coming to Williamsport, ..., to sell crack cocaine." (United States Opposition Brief, p. 1, 2)

As a threshold matter, we are compelled to note that those assertions are inconsistent with, if not completely contrary to, a stipulation filed by the parties on February 3, 2005.  The stipulation provides in relevant part as follows:

>   2.  After the vehicle was stopped for a traffic violation, David Green learned that there was crack cocaine in the vehicle.
>
>   3.  The defendant reasonably believed the quantity of drugs was less than 5 grams of crack, cocaine base, and that he was going to get some of it.

(Stipulation, pp. 1-2, ¶¶2, 3)

10

The government argues that neither it nor the court is bound by the facts set forth in the stipulation because facts first discovered after entry of the stipulation disprove the stipulation's accuracy. The government has not provided any authority to support its position.

Our view, and that of the reported cases, is that the government remains bound by the stipulation. *See* U.S. v. DeWitt, 366 F.3d 667, 672 (8th Cir. 2004)("Where the government stipulates to a drug quantity and a base offense level, it may not then initiate an effort at the sentencing hearing to obtain a greater sentence, even if the government has come to believe that the stipulation was made in error."); *see also* United States v. Cianci, 154 F.3d 106, 110 (3d Cir. 1998)(noting the court's reluctance "to allow a defendant to argue facts which contradicted those he agreed to in his plea agreement").

For that reason, to the extent that any other evidence (including Haisson Williams's testimony) is inconsistent with the parties' stipulation, we summarily disregard the evidence without further comment on it. The terms of the stipulation bind the parties and we will sentence Green pursuant to the terms of the stipulation.

Our decision to apply the terms of the parties' stipulation squarely resolves the factual disputes in this case. However, the videotape introduced into evidence at Green's pre-sentence

hearing merits further consideration because it supports the conclusions we have reached as a result of the stipulation.

The government asserts that Green exited the vehicle during the traffic stop in an attempt to distract the police to facilitate Billingsley's disposal of the drugs. A corollary to that assertion is that Green was acting in concert with Billingsley and the two men coordinated their movements to achieve their joint goal (i.e., disposal of the crack cocaine beside the vehicle). The videotape shows that while Green exited the vehicle only once, Billingsley did so twice. During the instance that both men were outside the vehicle, Billingsley's movements near the door of the vehicle do not appear to have been adequate for him to dispose of anything alongside the vehicle. It is far more likely that Billingsley placed the drugs on the road during the second time when he exited the vehicle and when Green was in the car. Consequently, the evidentiary record presented to us does not support the government's position.

For the reasons set forth above, the government has not met its burden of establishing (by even a preponderance of the evidence) that Green was in any manner involved with Williams's and Billingsley's plan to distribute drugs in Williamsport, Pennsylvania. Similarly, the government has not proven that, at any point prior to the traffic stop by the police on September 18, 2004, Green knew that there was crack cocaine in the vehicle.

The sentence imposed in this case will not be based upon any such involvement or knowledge.

III.  Conclusions of law.

1. The government is bound by the stipulation entered into by the parties and filed on February 3, 2005.
2. The government has not proven by a preponderance of the evidence that Green was in any manner involved with or aware of Williams's and Billingsley's conspiracy to distribute drugs in Williamsport, Pennsylvania.
3. The government has not proven by a preponderance of the evidence that, at any point prior to the traffic stop by the police on September 18, 2004, Green knew that there was crack cocaine in the vehicle.

An appropriate order will be entered.

s/Malcolm Muir  
MUIR, U.S. District Judge

DATED: October 13, 2005

MM:ga

```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                 MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA       :
                               :   4:CR-05-0058
     v.                        :
                               :
DAVID S. GREEN                 :   (Judge Muir)
                               :
```

**ORDER**

October 13, 2005

    Green's sentence will be imposed on November 4, 2005, at 4:15 p.m.


                                          s/Malcolm Muir
                                          MUIR, U.S. District Judge

MM:ga